UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION
CASE NO. 00-CV-6121-CIV-DIMITROULEAS

Magistrate Judge Johnson

MASHAAN GUY, et al.,

      Plaintiffs,

v.

MIAMI-DADE POLICE DEPARTMENT, et al.,

      Defendants.
_____/



## PLAINTIFFS' RESPONSE TO THE STADIUM DEFENDANTS' MOTION TO DISMISS

### I.

### Procedural Background

Plaintiffs Mashaan Guy and his wife Jacqueline Guy sued Miami-Dade police officer Robert Sisley, the Miami-Dade Police Department ("MDPD"), and three private plaintiffs, South Florida Stadium Corporation, Miami Dolphins, Ltd., and South Florida Football Corporation ("the Stadium defendants"), in state court, alleging violations of 42 U.S.C. §1983 and Florida tort law. The matter was removed to this Court and the Stadium defendants now move to dismiss the complaint.

### II.

### Allegations of the Complaint

On Monday night, December 21, 1998, the Miami Dolphins were to play the Denver Broncos



at Pro Player Stadium. The Stadium defendants[1] had arranged and promoted pre-game displays and activities outside the stadium in which thousands of people were participating (¶¶ 16,19).

Plaintiff, Mashaan Guy, a Miami Dolphins season ticket holder, had come to see the game. He held a ticket for a friend who had not yet arrived. An hour before game time, Mr. Guy was standing waiting for his friend outside Gate "H" when Officer Robert Sisley bicycled up (¶¶ 15, 18, 20).

Sisley was an employee of the MDPD as well as an employee of the Stadium defendants. He acted at all times within the course and scope of his employment with each set of employers, and "under color of law." (¶¶ 8-10, 12, 56, 68). In response to Sisley's inquiry what he was doing there, Mr. Guy responded that he was a Dolphins season ticket holder, showed Sisley his season tickets, and informed Sisley that he was waiting for his friend (¶¶ 20, 21).

Officer Sisley ordered Mr. Guy either to enter the stadium or to leave the premises and threatened Mr. Guy with arrest for trespassing. Mr. Guy explained to Sisley that he could not go into the stadium because he would then be unable to give his friend his ticket. He also explained that he had parked his car at the "Golden Glades interchange" and taken the shuttle bus to the stadium. He could not leave the stadium because the shuttle buses were not carrying people back to the Golden Glades interchange until after the game (¶¶ 17, 22-24).

Officer Sisley thereupon arrested and handcuffed Mr. Guy. He ignored Mr. Guy's complaint that the handcuffs were too tight and were cutting his wrists (¶¶ 25, 28). Sisley "ordered another officer, who was traveling on a golf cart, to transport Mr. Guy to a holding area located in the stadium." Mr. Guy remained handcuffed while Sisley "prepared paperwork." Mr. Guy was

---

[1] In their motion to dismiss, "the Stadium defendants" do not distinguish the acts or omissions of one member of their group from another. This Response will not do so either.

"transported to a van," and then to an area where he "was made to undress to his undershorts" and "processed." He was re-handcuffed, "escorted to a prisoner bus," and carried to the "Miami-Dade County Lockup" where he was fingerprinted, photographed, and imprisoned overnight in a cell (¶¶ 25, 28-32).

Officer Sisley prepared an arrest affidavit and report as a result of which Mr. Guy was charged with "trespassing after warning." Mr. Guy pleaded not guilty and the charges against him were eventually nolle prosequied by the State Attorney (¶¶ 34, 36-39, 41). This action followed.

Counts II and III of the complaint allege violations of 42 U.S.C. §1983 against the Stadium defendants based on their and Officer Sisley's acts of arresting, searching, imprisoning, and causing his prosecution maliciously, illegally, and without probable cause (¶¶ 55-60, 62, 67-72, 74). The complaint alleges that "Sisley acted under color of law, for the benefit of [the defendants]," "performed a law enforcement activity and utilized his authority under color of law as a police officer to enforce [defendants'] policies...with regard to Mr. Guy's rights to remain on the premises," and that the Stadium defendants "utilized a police officer to act under color of law" to enforce its policies of forcing persons either to enter the stadium, leave the premises, or be arrested (¶¶ 61, 63, 73, 75).

The Stadium defendants, the complaint further alleges, "had the power to prevent or aid in preventing" Sisley's wrongdoing, by exercising "reasonable diligence," but "knowingly, recklessly and with deliberate and conscious indifference failed or refused to do so and/or tacitly approved" Sisley's wrongful acts. The Stadium defendants "had the express policy" or had "delegated...carte blanche authority" to police officers "to arrest persons such as the Plaintiff even if such persons were lawfully on the property." The Stadium defendants, the complaint alleges, "permitted, tolerated, condoned, and or tacitly approved the pattern and practice of unjustified, unreasonable and illegal

arrests, assaults, batteries, and prosecutions by police officers." (¶¶ 64, 65, 76, 77).

In Counts VI, VII, XI and XII, the plaintiffs allege causes of action against the Stadium defendants under Florida law for assault and battery, and false arrest and imprisonment. The remaining Counts of the complaint allege §1983 and state law tort causes of action against Sisley and the MDPD.

## II.

### Standards of Review of the Stadium Defendants' Rule 12(b)(6) Motion to Dismiss

A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts" entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957); Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994); M/V Sea Lion V v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994). This Court must accept the complaint as true, and construe it and draw all inferences from it in the light most favorable to the plaintiffs. Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994); Vernon v. Medical Mgm't. Assocs. of Margate, Inc., 912 F.Supp. 1549, 1553-1554 (S.D. Fla. 1996). Given the foregoing principles, and the "short and plain statement" requirement of Fed. R. Civ. P. 8(a), "[t]he threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." Ancata v. Prison Health Serv., Inc., 769 F.2d 700, 703 (11th Cir. 1985); Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir. 1982)(notice pleading requirements apply in a §1983 action), cert. denied, 460 U.S. 1039 (1983).[2]

---

[2] The Stadium defendants also move to dismiss under Fed. R. Civ. P. 12(b)(1). Motions to dismiss under Rule 12(b)(1) are judged by Rule 12(b)(6) standards where, as here, the motion simply attacks the facial validity of the complaint. See, e.g., Eaton v. Dorchester Dev., Inc., 692 F.2d 727,

### III.

### The Complaint Sufficiently Alleges a §1983 Cause of Action Against the Stadium Defendants

In their motion to dismiss, the Stadium defendants concede that Sisley was on duty as a MDPD officer at the time of the incident (Memo at 4). The Stadium defendants also agree that this Court must accept as true plaintiffs' allegations that Sisley was at the same time an employee of the Stadium defendants (Memo at 10). It is therefore undisputed for the purposes of this motion that Sisley's actions as a private employee of the Stadium defendants were performed under color of law. The issue is whether plaintiffs have pleaded a §1983 cause of action against the private Stadium defendants with respect to or arising out of Sisley's actions.

A private party may be considered a "state actor" for §1983 purposes when it "has acted together with or has obtained significant aid from state officials." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-2754, 73 L.Ed.2d 482 (1982). A private party's willful, joint participation with a state actor in a constitutionally prohibited activity will also make the private party a "state actor" for §1983 purposes. Lugar, 457 U.S. at 941, 102 S.Ct. at 2756. See Adickes v. S.H. Kress & & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605-1606, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966). The complaint, fairly construed, shows that the Stadium defendants jointly participated with, and obtained significant aid from Sisley and the MDPD in the management of the stadium. The Miami-Dade Police Department "so far insinuated itself into a position of interdependence" with the Stadium defendants that it became, in effect, a "joint participant in the [Stadium defendants'] enterprise." Harvey v. Harvey, 949

---

732-734 (11th Cir. 1982).

F.2d 1127, 1131 (11th Cir. 1992) (quoting NBC v. Communications Workers of Amer., 860 F.2d 1022, 1026 (11th Cir. 1998)).

### A.

### The Stadium defendants' practice of working with the MDPD and hiring police officers for private purposes

The Stadium defendants, by law, would have had to apply to the MDPD for an off-regular-duty use permit in order to obtain Officer Sisley's off-duty police services. Miami Dade Code §2-56.1 et seq. The rules and regulations binding private permittees who employ off-duty County police officers are established by the MDPD. A permit issued by the MDPD "authorize[s] and define[s] such off-regular-duty police services...as the Department deems appropriate." Id. §§2-56.3 & .10. The permittee pays the MDPD for the officer's services and the MDPD pays the officer. Id. §§2.56-3, .6 & .7. All MDPD officers assigned to off-regular-duty work are "deemed to be acting within the course and scope of their official duties while fulfilling permit assignments." Id. §2-56.8.

By hiring a MDPD officer to work on its premises and enforce its private property rights under terms and conditions defined, in part, by the officer's public employer, the Stadium defendants' interests and those of the MDPD became inseparably intertwined. In Groom v. Safeway, Inc., 973 F.Supp. 987 (W.D. Wash. 1997), a customer sued Safeway under §1983 for her unlawful arrest by a Seattle police officer working for Safeway. The court found that Safeway's employment of a state actor for private purposes made Safeway a state actor as well:

> In the instant case, Safeway did more than cloak itself with the authority of the state: it hired an instrument of the state's power. Officer Hori, his uniform, his badge, and his gun were all hired to serve Safeway's goal of deterring theft in its stores. Although Hori

>acted in his capacity as a police officer, he did so on Safeway's time. Safeway stresses that the way in which Hori performed his duties was not subject to Safeway's control, but Hori nonetheless performed those duties in Safeway's store and on Safeway's behalf; presumably he could not have wandered out of the store to patrol the surrounding neighborhood. Thus, the employment relationship gives the private entity and the state agent an overlapping identity and interest and sufficiently involves the state in the relevant actions of the private entity to bring those actions under color of state law.

Id. at 991. Accord Rojas v. Alexander's Dept. Store, Inc., 654 F.Supp. 856, 858 (E.D.N.Y. 1986)(Alexander's motion to dismiss denied because the "decision to employ a 'special patrolman' involves a utilization for Alexander's benefit of state law enforcement authority sufficient to satisfy section 1983's 'under color' of state law requirements"). See Anderson v. Tower Records, 1995 U.S. App. Lexis 31428 (1st Cir. 1995)("[T]here are circumstances under which security guards and their employers have been found to be state actors").

Officer Sisley and the MDPD were discharging a public law enforcement function by working for and with the Stadium defendants. At the same time they were directly serving the Stadium defendants' private property interests. The statute that Sisley charged Mr. Guy with violating, "trespassing after warning," §810.08(1) Fla. Stat., requires a warning "to depart" communicated to the offender by the owner of the premises "or by a person authorized by the owner." In order to warn under §810.08, Officer Sisley had to be pre-authorized to do so by the private Stadium defendants. See State v. Dye, 346 So.2d 538, 542 (Fla. 1977)(interpreting companion section 810.09). Section 810.08 "was passed by the Legislature to assist the property owner in the protection of his property." Corn v. State, 332 So.2d 4, 8 (Fla. 1976). The "trespass after warning" statute thus places the police power of the state directly at the disposal of a private property owner particularly where, as here, a police officer serves as the owner's pre-authorized agent.

The order that Sisley gave Mr. Guy, purportedly under §810.08, further illustrates this confusion of public and private interests. Section 810.08(1) requires a person to "refuse[ ]" an order "to depart." Sisley, however, did not order Mr. Guy "to depart." He told him to go inside the stadium or depart -- a very different matter. On its face, Sisley's order was inconsistent with the language of §810.08 and Mr. Guy's alleged status as a trespasser. Mr. Guy, of course, was not a trespasser but a business invitee of the Stadium defendants with a license – his season ticket – to be on the premises. Section 810.08 does not authorize the arrest of a person who has refused a property owner's order to go further into, or stay longer on, the owner's property -- as Mr. Guy was ordered to do. Sisley's order, which presented Mr. Guy with an unconscionable choice between missing his friend or missing the game, was an arbitrary act of private traffic control, not public law enforcement.

### B.

### The Stadium defendants' provision to the MDPD and Sisley of facilities, services and support

The Stadium defendants created, or allowed Sisley and the MDPD to create, a public law enforcement facility and a standing police presence on their premises. After Mr. Guy was arrested he was transported, at Sisley's order, by another police officer equipped with a golf cart to a van, and from the van to a holding cell area inside the stadium where he was imprisoned, strip-searched and processed. A Miami Dade County prison bus was called to the stadium and Mr. Guy was transferred to this vehicle for transport to the Miami Dade County jail. The Stadium defendants thus maintained physical facilities for the MDPD inside the stadium where the MDPD could detain, strip-search and process any person whom the Stadium defendants' employees, like Sisley, might accuse of wrongdoing.

In <u>Gilbert v. Sears, Roebuck & Co.</u>, 899 F.Supp. 597 (M.D. Fla. 1995), the court determined that Sears' physical involvement in police surveillance of homosexual activity on Sears' premises could support a finding of joint participation with the state under §1983:

> Sears did not merely inform or elicit help from the police. Sears allowed the TPD [Tampa Police Department] access to its premises. TPD routinely checked in with Sears' security office when arriving on duty. Additionally, Sears provided the TPD with the use of Sears' security office for making arrests and filling out paperwork. Furthermore, Sears provided TPD with use of security equipment, including a video camera that showed a view of the hallway leading to the men's bathroom in the Tampa Bay Mall Sears' store. Moreover, the TPD and Sears jointly decided to post a sign in the bathroom advising customers that police are surveying the bathroom. Sears determined the wording of the sign and produced the sign in-house. In addition, Sears created a file containing information on each of the persons arrested.
>
> Plaintiff contends that although the police officers' acts most directly violated Plaintiff's constitutional rights, the program that this law enforcement operation was "plugged into" and made part of, was, from beginning to end, that of Sears. In other words, TPD's operation was a tool utilized by Sears to achieve its own goals.
>
> This Court finds that a genuine issue of material fact exists as to whether Sears acted jointly with the TPD. Accordingly, the Court denies Sears' Motion for Summary Judgment on Count I, violation of 42 <u>U.S.C</u>. § 1983.

<u>Id</u>. at 599. The Stadium defendants similarly provided Sisley and the MDPD with physical facilities, analogous to a police substation, in which Mr. Guy's unlawful arrest, search, transport, processing and detention could be accomplished for the Stadium defendants' private purposes.

### C.

### The Stadium defendants' implicit agreement and understanding with the MDPD

Plaintiffs, at this pre-discovery stage of the case, do not know the exact nature of the express

or implied agreements between and among the Stadium defendants, Sisley and the MDPD. The facts alleged in the complaint, however, support an inference that the MDPD followed a no-questions-asked practice of detaining, processing and transporting, persons accused of wrongdoing by off-duty officers privately employed by the Stadium defendants.

While employed by the Stadium defendants and performing the duties of a private security guard, Sisley, exploiting his MDPD authority, detained Mr. Guy without probable cause on a spurious charge, and then "ordered another officer" (Complaint ¶29), to transport Mr. Guy to a "holding area" inside the stadium. Mr. Guy was successively handed-off, strip-searched, handcuffed, re-handcuffed and processed by other police officers in an unquestioning chain of custody that terminated with his imprisonment in a Miami Dade County jail cell. This course of events was triggered entirely by Sisley's illegal arrest of, or accusation against, Mr. Guy while Sisley was working privately for the Stadium defendants. There was no apparent independent investigation or determination by any other MDPD officer of whether Sisley had probable cause to detain or accuse Mr. Guy.

These circumstances suggest that a preexisting understanding or policy existed between the Stadium defendants, off-duty police officers like Sisley, the MDPD, and the Miami Dade County jail, under which anyone detained by a MDPD officer working for the Stadium defendants would automatically be criminally processed. Under this arrangement, the full force of the state's criminal justice system was invoked against Mr. Guy by the accusation of a privately employed MDPD police officer acting without constraint or oversight for the sole benefit of his private employer.

When police detain a shoplifter without independent investigation based solely on a store employee's accusation, the store has been found to be a state actor under §1983. Duriso v. K-Mart No. 4195, 559 F.2d 1274 (5th Cir. 1977); Smith v. Brookshire Bros., Inc., 519 F.2d 93 (5th Cir.

1975), cert. denied, 424 U.S. 915 (1976). Accord Lusby v. T.G.&Y. Stores, Inc., 749 F.2d 1423,1430, 1432-1433 (10th Cir. 1984), vacated on other grounds, 474 U.S. 805 (1985), reaffirmed on remand, 796 F.2d 1307 (10th Cir. 1986).[3] The plaintiffs' allegations in this case fairly support a Duriso/Smith/Lusby theory of joint action against the Stadium defendants.

The plaintiffs' theory of their case under §1983 as set forth in Section I, and subsections A., B., and C., supra, is essentially unaddressed in the Stadium defendants' motion to dismiss and in the cases the Stadium defendants cite.[4] Plaintiffs, contrary to the Stadium defendants' assumptions in their motion to dismiss, are not asserting a respondeat superior theory, or a conspiracy theory, or a theory that the Stadium defendants for some reason had a policy of harassing their season ticket holders. The plaintiffs' pre-discovery theory of the case is that the MDPD so "insinuated itself into a position of interdependence" with the Stadium defendants that it became a joint participant with those defendants in the latter's control over its private premises, ticket-holders and invitees. See Harvey v. Harvey, 949 F.2d at 1131.

### IV.

### The Complaint Sufficiently Alleges The Vicarious Liability of the Stadium Defendants for Sisley's Torts

---

[3] Lusby, 749 F.2d at 1432-1433, implicitly distinguishes on a concert-of-action theory two cases on which the Stadium defendants rely (Motion at 6,7): Draeger v. Grand Central, Inc., 504 F.2d 142 (10th Cir. 1974), and Powell v. Shopco Laurel Co., 678 F.2d 504 (4th Cir. 1982).

[4] Rey v. K-Mart Corp., 11 Fla. L. Weekly Fed. D 855 (S.D. Fla. July 22, 1998), on which the Stadium defendants rely, is distinguishable. In that case the store detectives "acted not as police, but as private employees." Here, just the opposite is alleged. Rey also found no allegation of an unconstitutional store policy or custom. A specific policy need not be alleged in a §1983 action where, as here, the relationship between a public and a private entity reflects joint activity under Lugar. The Guys' theory of their case -- that an impermissible, physical, tangible nexus or interdependence existed between the Stadium defendants and the MDPD -- was not addressed in Rey.

Plaintiffs clearly have pled a vicarious liability relationship between Sisley and the Stadium defendants with respect to the state law causes of action. Sisley's actions were of the type he was hired to perform, he performed them while he was on the job, and there is nothing in the complaint to suggest that he was not motivated, at least in part, by a desire to serve the Stadium defendants' interests. See Sussman v. Florida East Coast Properties, Inc., 557 So.2d 74, 75-76 (Fla. 3d DCA 1990), rev. denied, 574 So.2d 143 (Fla. 1990). Under the rule in Sussman, Florida employers can be held liable for their employees' intentional torts. See, e.g., Dos Santos v. Ajax Navigation Corp., 531 So.2d 231, 237 (Fla. 3d DCA 1988), Everett v. Florida Inst. of Technology, 503 So.2d 1382, 1383-1384 (Fla. 5th DCA 1987), rev. denied, 511 So.2d 998 (Fla. 1987). The Stadium defendants seem to forget, in their inscrutable insistence that ¶26 of the complaint releases them from all liability, that they are vicariously responsible for Sisley's treatment of Mr. Guy. Unlike the jurisprudence of §1983, under Florida tort law respondeat superior is still very much a basis for a master's or principal's liability.

The Stadium defendants' cases are distinguishable. Montero v. Live & Let Live Drug Store, 736 So.2d 772 (Fla. 3d DCA 1999), is an appeal of a directed verdict, not an appeal from a dismissal of a complaint. Montero has nothing to say about the legal sufficiency of the causes of action pled in the present complaint. Montero, in any event, involves an "independent investigation" by the police. As plaintiffs have shown, that is not what the complaint in this case alleges.

The Stadium defendants' reliance on Rivers v. Dillards Dept. Store, Inc., 698 So.2d 1328 (Fla. 1st DCA 1997), is similarly misplaced. Rivers involves a summary judgment, not a motion to dismiss a complaint. Moreover, the Stadium defendants read Rivers as affirming the summary judgment in the defendants' favor on the issue of wrongful detention (Motion at 14). Rivers' holding

is precisely the opposite: "This question of fact [whether the detention was reasonable and warranted under the circumstances] cannot be decided on summary judgment, therefore we reverse as to the claim of false imprisonment." Id. 698 So.2d at 1333.

The Stadium defendants seem to regard the issues of probable cause and privilege as elements of the plaintiffs' state law claims that plaintiffs had to specifically plead. Probable cause and privilege, however, are affirmative defenses. See, e.g., Jackson v. Navarro, 665 So.2d 340, 342 (Fla. 4th DCA 1995)("in false arrest the lack of probable cause is not an element which plaintiff must prove, but is rather an affirmative defense."), Hernandez v. Metro-Dade County, 992 F. Supp. 1365, 1368 (S.D. Fla. 1997); Fed.R.Civ.P. 8(c). Because neither affirmative defense "clearly" appears "under the most favorable version of the facts alleged" in plaintiffs' complaint, this Court may not dismiss on either grounds. Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993).

## V.

### If the Court Does Grant the Stadium Defendants' Motion Leave Should Be Given to Amend

If this Court grants all or part of the Stadium defendants' motion to dismiss, the dismissal should be with leave to amend. Bank v. Pitt, 928 F.2d 1108, 1111-1113 (11th Cir. 1991). See Anderson v. Tower Records, 1995 U.S. App. Lexis at 31428 ("Since there are circumstances under which security guards and their employers have been found to be state actors...we cannot say that Anderson would be unable to cure any deficiency in his allegations by more specific pleadings").

### CONCLUSION

For the foregoing reasons, the Stadium defendants' motion to dismiss should be denied. If the motion is granted, plaintiffs should be given leave to amend.

13

Stephen L. Malove, Esq.
Malove & Kaufman, P.A.
Penthouse
48 East Flagler Street
Miami, FL 33131
(305) 577-0077

and

Lawrence & Daniels
21st Floor
100 North Biscayne Boulevard
Miami, FL 33132
(305) 358-3371

By _____
Adam Lawrence
FBN 188175

### Certificate of Service

I Hereby Certify that a true copy of the foregoing was mailed to Michael Rotunno, Esq., Marlow, Connell, Valerius, et al., Grove Professional Building, 2950 SW 27th Avenue, Suite 200, Miami, Florida 33133, attorneys for defendants Dolphins, Football and Stadium, and James Allen, Esq., County Attorney's Office, 111 NW 1st Street, Suite 2810, Miami, Florida 33128, attorneys for Miami-Dade and Sisley, this 22 day of February, 2000.

_____
Adam Lawrence