

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Broward Division
Case Number 00-6121-Civ-Dimitrouleas/Johnson

**MASHAAN GUY** and **JACQUELINE GUY**,

                          Plaintiffs,

V.

**MIAMI-DADE COUNTY POLICE DEPARTMENT**, f/k/a Metro-Dade County Police Department; **SOUTH FLORIDA STADIUM CORPORATION**, d/b/a Pro Player Stadium; **MIAMI DOLPHINS, LTD.; SOUTH FLORIDA FOOTBALL CORPORATION**, General Partner of Miami Dolphins, Ltd.; and **ROBERT SISLEY**,

                          Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF SISLEY'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

COMES NOW Defendant SISLEY, by and through undersigned counsel, and pursuant to Local Rules 7.1 and 7.5, submits his Memorandum of Law in support of his Motion to Dismiss or for Summary Judgment:

### INTRODUCTION

This is a civil rights action brought against Miami-Dade County Police Officer SISLEY[1] arising out of an arrest at a Miami Dolphins football game on December 21, 1998. Plaintiff Mashaan Guy

---

[1] Plaintiff has also sued the Miami-Dade County Police Department, which has answered the Complaint, as well as other private defendants.



claims that SISLEY violated his civil rights (Count I). Plaintiff also attempts to allege state tort claims of assault and battery (Count IV), malicious prosecution (Count VIII) and false imprisonment and detention (Count IX) against Sisley. Both Plaintiff Mashaan Guy and his wife, Jacqueline Guy, claim compensatory and punitive damages against SISLEY under each of the above counts. ¶¶ 42, 43, 54, 81, 100, and 105.

## STANDARD OF REVIEW

In addition to moving to dismiss, SISLEY has also requested that this Court treat his motion as one for summary judgment, and has submitted affidavits in support thereof. Both standards are therefore set forth below.

**Summary Judgment.** Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is a legal element of a claim under the applicable substantive law and one which might affect the outcome of the suit under the governing law. *Id.* A material fact is "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Id.*

A plaintiff cannot defeat a defendant's properly supported motion for summary judgment without an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. *Id.* A mere scintilla of evidence is insufficient to defeat a motion for summary judgment: *Id.* at 251. Courts reviewing a motion for summary judgment focus on "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*).

The initial burden is on the moving party to establish the absence of a genuine issue as to any material fact. *Allen*, 121 F.3d at 646 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The moving party may discharge this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In deciding whether the burden has been satisfied, the Court must view the evidence and all reasonable inferences arising from it in the light most favorable to the nonmoving party. *Allen* at 646.

Once the movant has satisfied its burden, the burden shifts to the nonmoving party to present evidence sufficient to make a "showing that the jury could reasonably find for that party." *Id*. Facts asserted by the party opposing a summary judgment must be regarded as true if supported by affidavit or other evidentiary material. *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981). However, where the nonmoving party bears the burden of proof of an essential element to that party's case, summary judgment is warranted when the party fails to make a showing sufficient to establish the essential element. *Celotex*, 477 U.S. at 323. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

**Motion to Dismiss.** A court should dismiss a complaint for failure to state a claim if "it appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D. Fla. 1996). At a

3

minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47 (*quoting* Fed. R. Civ. P. 8 (a) (2)). In deciding a motion to dismiss, the Court must examine only the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D. Fla. 1995). Also, the Court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974).

A motion to dismiss which is based on qualified immunity from civil rights liability requires Plaintiff to meet an even higher burden. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992).[2] Specifically, a plaintiff is held to a "heightened pleading" standard, and must set forth in detail the facts upon which he bases his claim. *Id.* In ruling on a motion to dismiss, it is the officer's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *Behrens*, 516 U.S. 299 (1996). Unless the plaintiff's allegations state a violation of clearly established law, a government official is entitled to dismissal before the commencement of discovery. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Nolen v. Jackson*, 102 F.3d 1187, 1190 (11th Cir.

---

[2] This rule survives the more liberal test set forth in *Leatherman v Tarrant County Narcotics Intelligence & Coordination Unit*, 113 S.Ct. 1160 (1993), wherein the Supreme Court held that a heightened pleading requirement could not be applied in a Section 1983 action against a municipality. *See, e.g., Arnold v. Board of Educ. of Escambia County*, 880 F.2d 305 (11th Cir. 1989) *Marx v. Gumbinner*, 855 F.2d 783, 788 n.7 (11th Cir. 1988); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1402 n.23 (5th Cir. 1996); *Denno v. School Bd. of Volusia County*, 959 F.Supp. 1481, 1485 (M.D. Fla. 1997); *Ross v. State of Alabama*, 893 F.Supp. 1545 (M.D. Ala. 1995); *Malone v Chambers County Board of Commissioners*, 875 F.Supp. 773, 790 (M.D. Ala. 1994); *Williams v. Alabama State University*, 865 F.Supp. 789, 798-99 (M.D. Ala. 1994); *Arrington v. Dickerson*, 915

1997); *Williams v. Alabama State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997); *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995); *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993); *Oladeinde*, 962 F.2d at 1485; *Jasinski v. Adams*, 781 F.2d 843, 845 (11th Cir. 1986); *Flinn v. Gordon*, 775 F.2d 1551, 1553 (11th Cir. 1985).

**UNDISPUTED FACTS**

On or about December 21, 1998, SISLEY was one of several off-regular duty Miami-Dade County Police Officers working at a Miami Dolphins game at Pro Player Stadium. As such, and in addition to his regular law enforcement duties and powers, he was authorized to be a representative of Dolphin Stadium Corporation for purposes of advising persons to leave Stadium property.

Before the football game began, SISLEY approached a group of individuals involved in illegal ticket sales outside of Gate H at Pro Player Stadium. As SISLEY approached, Plaintiff, who was standing nearby, called out to them "Watch Out," in an apparent attempt to warn the sellers. SISLEY therefore reasonably suspected that GUY was somehow involved in the illegal selling of tickets to the football game.

After dealing with the sellers, SISLEY approached Plaintiff, who denied warning the sellers. SISLEY asked for identification. Plaintiff stated that he had none, but that he did have two tickets for the game, and that he was waiting for a friend. SISLEY asked him where he was parked, and he indicated the northwest area of the Stadium grounds

Due to the Plaintiff's warning the illegal ticket sellers, the fact that he had no identification, and his evasive demeanor and behavior, SISLEY believed that the Plaintiff may be involved in the resale or scalping of tickets. The Stadium does not allow the resale of tickets and routinely makes

---

F. Supp. 1516, 1520, 1522 (M.D. Ala. 1996) (same).

5

announcements to the affect over the loudspeaker. SISLEY informed the Plaintiff that he would have to either enter the stadium or leave the property. GUY refused to enter the stadium, but agreed to leave, and began to walk in the general direction of where he said his car was parked

SISLEY continued to observe Plaintiff, and saw him stop near Gate A. SISLEY therefore approached Plaintiff again, and repeated his instruction to leave. GUY again refused, and questioned SISLEY's authority to require him to leave. He was instructed again to leave, and when he refused, SISLEY arrested him for trespass.

### SISLEY IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' FEDERAL CLAIM.

Sisley's motion for summary judgment is based most fundamentally on the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil trials, from the other burdens of litigation, including discovery, and from liability if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kentucky v. Graham*, 473 U.S. 159 (1985); *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149-51 (11th Cir. 1994) (en banc). A government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of *clearly established law and the information possessed by the official* at the time the conduct occurred." *Hardin v. Hayes*, 957 F.2d 845, 858 (11th Cir. 1992) (emphasis added). Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal "rights" allegedly violated were "clearly established." *Barts*, 865 F.2d at 1190 (citing *Mitchell v. Forsyth*,

472 U.S. 511, 528 (1985)). The qualified immunity doctrine means that government agents are not always required to err on the side of caution. *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

In addressing a motion for summary judgment based specifically on qualified immunity, the court's inquiry involves several steps. First, what was the government official's conduct and knowledge at the time of that conduct? The trial court must examine the pleadings, depositions, and affidavits and identify precisely the official's relevant actions and knowledge at the time of the conduct. *See McMillian v. Johnson*, 88 F.3d 1554, 1570 (11th Cir. 1996), *modified*, 101 F.3d 1363 (11th Cir. 1996); *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996) ("taking the facts known to the particular defendant"); *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996); *Swint v. City of Wadley*, 51 F.3d 988, 995 (11th Cir. 1995) ("We look to…the information possessed by the official at the time the conduct occurred.") (*citing Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992)); *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) ("courts judge the acts of defendant government officials against the law and facts at the time defendants acted, not by hindsight, based on later events"); *Harris*, 21 F.3d at 391-93.

Second, was this conduct within the officer's discretionary authority? *Dolihite*, 74 F.3d at 1040 n.21. This is usually not an issue in dispute, particularly in cases such as this involving law enforcement officers.

Third, does the conduct constitute a violation of applicable constitutional law? *Wilson v. Layne*, 526 U.S. 603, ___, 119 S.Ct. 1692, 1697 (1999); *Conn v. Gabbert*, 526 U.S. 286 (1999); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999). This order of procedure is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Siegert v. Gilley*, 500 U.S.

7

226, 232 (1991). Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public. *See County of Sacramento v. Lewis,* 523 U.S., 833, 840-842, n.5 (1998).

Fourth, was the applicable law "clearly established" at the time in question?[3] *Behrens,* 516 U.S. at 313 ("the issue is whether the federal right allegedly infringed was 'clearly established'"); *Howell v. Evans,* 922 F.2d 712, 718 (11th Cir. 1991), *vacated pursuant to settlement,* 931 F.2d 711 (11th Cir. 1991); *Hutton v. Strickland,* 919 F.2d 1531, 1538 (11th Cir. 1990). "The essence of qualified immunity is that it is unfair--and, as a matter of public policy, unwise-to impose personal liability on government officers unless the officers had advance notice that what they were doing was unlawful." *Lassiter,* 28 F.3d at 1152 (second emphasis added).

Because most government officials and employees are not trained in the law, the standard by which the sufficiency of that notice will be judged is not the same as would be applied to a lawyer or judge. *Id.* at 1152, n.8. Thus, the fact that a "legal expert" would have concluded that the conduct was unlawful is not determinative. Instead, the clarity of the law is judged from the standpoint of a reasonably competent, lay, government official holding the same position and facing the same circumstances as the defendant. *Id.*

Therefore, broad legal truisms, general rules and propositions of law, and abstract rights do not

---

[3]The United States Supreme Court has never clearly defined just how far the court must or may search for "clearly established" law. The Eleventh Circuit has ruled that it considers only decisions from the United States Supreme Court, the Eleventh Circuit, other circuits, and the district courts. *Leeks v. Cunningham,* 997 F.2d 1330 (11th Cir. 1993). In another decision, however, the Eleventh Circuit looked only to the United States Supreme Court, and Eleventh Circuit cases, but noted that decisions of the highest pertinent state court *might* be considered. *Courson v. McMillian,*

constitute clearly establish law. *See Dolihite*, 74 F.3d at 1040-41; *see also Hamilton v. Cannon*, 80 F.3d 1525, 1532 (11th Cir. 1996) ("In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable;") *Barts v. Joyner*, 865 F.2d 1187, 1190 (11th Cir. 1989) ("The question in this case is not whether it is clearly established that unreasonable seizures are prohibited; they are"); *Lassiter*, 28 F.3d at 1150 ("General propositions have little to do with the concept of qualified immunity.") (*quoting Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987)); *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995) ("Mere recitations of general rules or abstract rights do not demonstrate that the law was clearly established…"); *Hartsfield v. Lemacks*, 50 F.3d 950, 954 (11th Cir. 1995) ("(P)laintiffs cannot discharge their burden simply by referring to general rules or abstract rights"); *D'Aguanno v. Gallagher*, 50 F.3d 877, 880 (11th Cir. 1995) ("To overcome the qualified immunity defense, citing precedent which establishes a general right will not do."); *Rodgers v. Horsley*, 39 F.3d 308, 311-12 (11th Cir. 1994) (case which announced a broad legal principle was insufficient to create a clearly established right); *Belcher v. City of Foley*, 30 F.3d 1390, 1395 (11th Cir. 1994) (sweeping propositions of case law are insufficient to create a clearly established right); *Spivey*, 29 F.3d at 1527 ("But it is not enough to make 'conclusory allegations of a constitutional violation' or to state 'broad legal truisms.'") (*quoting Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1322-23 (11th Cir. 1989)); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) (supporting the above proposition), *modified*, 14 F.3d 583 (11th Cir. 1994); *Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990) ("In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable.") Violation of this rule is the "most common error" committed in qualified immunity analysis. *Suissa v. Fulton*

939 F.2d 1479 (11th Cir. 1991).

9

*County*, 74 F.3d 266, 269 (11th Cir. 1996); *Lassiter*, 28 F.3d at 1150.

The "clearly established" standard demands that a bright line be crossed before qualified immunity may be denied. *Post*, 7 F.3d at 1557; *Adams*, 962 F.2d 1578. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." The "bright line" referred to is a factual line. *Post* at 1557. In *Lassiter*, the Eleventh Circuit, sitting en banc, clarified how bright the line must be:

> For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law. Qualified immunity is a doctrine that focuses on the actual, on the specific, on the details of concrete cases.
>
> ...
>
> For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.
>
> ...
>
> The line between lawful conduct and unlawful conduct is often vague and thin. The essence of qualified immunity is that it is unfair--and, as a matter of public policy, unwise--to impose personal liability on government officers unless the officers had advance notice that what they were doing was unlawful. Pre-existing law must supply this notice; the unlawfulness must be obvious, considering the circumstances confronting the officers.

*Id*. at 1149-50, 1152 (citations omitted). In other words, "(t)he law which must be clearly established is that governing the specific factual situation confronting the government official in the particular case." *Harris v. Board of Educ.*, 105 F.3d 591, 596 (11th Cir. 1997). The necessary bright line can only be established by: (1) a controlling decision, (2) which existed prior to the incident in question,

(3) which involved facts materially similar to those in the case before the court, and (4) which held the conduct to constitute a constitutional violation. *See, e.g., Collins v. School Bd.*, 981 F.2d 1203, 1205 (11th Cir. 1993).

Fifth, if the law was clearly established, did the defendant violate *that* law? *Dolihite*, 74 F.3d at 1040 ("The qualified immunity analysis requires the court to determine whether a defendant violated clearly established constitutional law."); *Eubanks*, 40 F.3d at 1160; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993) ("No evidence showed that Sellers-Sampson, Hurley, at Danziger had anything to do with the decision whether or not to prosecute Lirio."), *modified*, 14 F.3d 583 (11th Cir. 1994).

Sixth, if the law was clearly established and if the defendant violated that law, could a reasonable government official have believed his or her actions were lawful in light of that clearly established law and the information possessed by the government official at the time the conduct occurred? *Dolihite*, 74 F.3d at 1041; *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996); *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539 (11th Cir. 1994); *Harris v. Coweta County*, 21 F.3d 388, 390 (11th Cir. 1994); *Post*, 7 F.3d at 1558; *Nicholson v. Georgia Dept. of Human Resources*, 918 F.2d 145, 146-47 (11th Cir. 1990); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989); *Harrell v. United States*, 875 F.2d 828, 830 (11th Cir. 1989) (applying "reasonable officer" standard); *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989), *modified, Edwards v. Okaloosa County*, 23 F.3d 358 (11th Cir. 1994).

In accordance with the Supreme Court's instruction in *Wilson*, 526 US 603, and *Conn*, 562 U.S. 286, we begin by demonstrating that SISLEY's conduct did not violate GUY's constitutional

rights at all.[4] Since GUY's claim arises out of his arrest, the constitutionality *vel non* of SISLEY's conduct is evaluated under the Fourth Amendment.[5] A warrantless arrest is constitutionally reasonable if probable cause exists. As the Court in *Brinegar v. United States*, 338 U.S. 160, 175 (1949) explained,

> In dealing with probable cause, ... as the very name implies we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act.

A similar approach was expressed later in *United States v. Cortez*, 449 U.S. 411, 418 (1981):

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*See also Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1120 (11th Cir. 1992) ("Probable cause requires more than mere suspicion, but does not require convincing proof.");

*State v. Scott*, 641 So.2d 517, 519 (Fla. 3d DCA 1994) ("[T]he facts necessary to establish probable

---

[4] We begin at the third step of the six-step process described *supra*, because the facts of SISLEY's action and knowledge have already been set forth (step 1), and because we do not anticipate that Plaintiff seriously disputes that SISLEY was acting within the scope of his discretionary authority as a police officer (step 2).

[5] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

cause need not reach the standard of conclusiveness and probability as the facts necessary to support a conviction.").

Thus, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully reduced to a neat set of legal rules." *Gates* at 232. Only in that context have courts formulated the familiar "definition" of probable cause: Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed ... an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995); *accord Benefield v. State*, 160 So.2d 706 (Fla. 1964).

Here, there can be no question that SISLEY had probable cause to arrest Guy.[6] He heard Guy attempt to interfere with SISLEY's attempt to prevent the illegal resale of tickets by others on Stadium grounds. (That act alone, particularly when coupled with Guy's refusal to provide identification and other evasive demeanor, would have been sufficient for SISLEY to arrest Guy for interfering with the former's performance of his duties, in violation of Section 843.02, Florida Statutes (1997).[7] *See Porter v. State*, 582 So.2d 41 (Fla. 4th DCA 1991) (defendant who shouted out warning that allowed drug dealers to escape police properly arrested for obstruction). When Guy

---

[6] The resolution of this issue in SISLEY's favor also entitles him to summary judgment on the state law claims of false arrest and malicious prosecution. *City of Hialeah v. Rehm*, 455 So.2d 458 (Fla. 3d DCA 1984) (probable cause absolute bar to false arrest claim). SISLEY respectfully submits that he is entitled to summary judgment on the assault and battery claim as well, in light of the fact that no force was used against GUY other than to apply handcuffs, and such force cannot be the basis for an assault and battery charge. *See Fridovich v. Fridovich*, 598 So.2d 65 (Fla. 1992); *Lester v. City of Tavares*, 603 So.2d 18 (Fla. 5th DCA 1992).

[7] The statute provides in pertinent part: "Whoever shall resist, obstruct, or oppose any officer...in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor."

further refused to obey SISLEY's authorized instruction to either enter the Stadium or leave the property, SISLEY clearly had probable cause to arrest for trespass pursuant to Section 810.09.[8]

Even if we assume *arguendo* that SISLEY lacked probable cause, Plaintiff fares no better in the remaining analysis. He cannot establish the "bright line" necessary to show that the law governing SISLEY was "clearly established," because no such case exists. Put another way, as some Eleventh Circuit court decisions have, even if SISLEY lacked *actual* probable cause, he clearly had "arguable" probable cause. *See, e.g., Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995) *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (11th Cir. 1995); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994); *Moore v. Gwinnett County*, 967 F.2d 1495 (11th Cir. 1992); *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992); and *Von Stein v. Brescher*, 904 F.2d 572 (11th Cir. 1990).

## PLAINTIFFS HAVE FAILED TO STATE A FEDERAL CLAIM AGAINST SISLEY FOR WHICH RELIEF CAN BE GRANTED

Even if a material issue of fact existed regarding Plaintiffs' federal claims against SISLEY, he is nevertheless entitled at least to dismissal of the Complaint.

---

[8] The statute provides in pertinent part: "A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property ... [a]s to which notice against entering or remaining is given...commits the offense of trespass...." § 810.09(1)(a), Fla. Stat. (1997).

Plaintiff will likely point out that he was not charged with violating that statute, but instead was charged with violating Section 810.08, which prohibits trespass after warning in a structure or conveyance. The error was inadvertent and immaterial. *See, e.g., Biddle v. Martin*, 992 F.2d 673 (7th Cir 1993) (do not need probable cause for specific offense with which plaintiff charged if probable cause existed for closely related charge).

### *Plaintiffs have not pled sufficient facts to overcome SISLEY's entitlement to qualified immunity.*

Because Plaintiff has sued SISLEY individually, he must allege and prove not only that he violated his constitutional rights (which, as we have seen, he has failed to do), but also that SISLEY is *not* entitled to the protection of qualified immunity. Plaintiffs have failed to meet the heightened pleading standard required by *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). Under those circumstances alone (since we are limited to the four corners of Plaintiffs' complaint and must assume the truth of the allegations therein), Defendant is entitled to know why he is not protected by qualified immunity.

## THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE TORT CLAIMS

If this court agrees that SISLEY is entitled to judgment as a matter of law as to Plaintiffs' federal claims, it must then decide whether to continue to exercise supplemental jurisdiction pursuant to 28 U.S.C. Section 1367[9] over Plaintiffs' state law claims. Typically, and particularly where, as

---

[9] Since this action was originally filed in state court, Plaintiffs did not allege any basis for this court's jurisdiction over their tort claims. They presumably would rely upon 28 U.S.C. Section 1367, which explains, in pertinent part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> ...
>
> (c)     The district court *may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--*

here, the case is in the initial stages, courts in this district and elsewhere will dismiss or remand any remaining state law claims. *See, e.g., See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (emphasizing that when federal law claims have dropped out of lawsuit so as to leave only state law claims at issue, federal court should avoid needless decisions of state law as matter of comity). *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27 (1966); *Summer v. Land & Leisure, Inc.*, 571 F.Supp. 380 (S.D. Fla. 1983).

In addition, this court should decline to exercise supplemental jurisdiction over Plaintiffs' tort claims because they will be likely to confuse the jury. Counts IV, VIII, and IX encompass legal duties and standards of care arising wholly under Florida law. 28 U.S.C. § 1367 (c) provides that a district court may decline to exercise supplemental jurisdiction over a supplemental claim if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE (305) 375-5151

The subsection applicable presently is the last one. The potential for jury confusion can be a sufficiently compelling reasons for declining jurisdiction. *See Moor v. County of Alameda*, 411 U.S. 693, 716-17 (1973); *see also* Wright, Miller, & Cooper, *Federal Practice & Procedure*, § 3567.1, n. 46.

The applicable standards for a Fourth Amendment claim, as compared to a negligence claim, are different. Use of force in a Fourth Amendment seizure is constitutional if it is "objectively reasonable" in a constitutional sense. *Graham v. Connor*, 490 U.S. 386 (1989). The same word is used in a non-constitutional context in the Florida Standard Jury Instruction on negligence. Fla. Std. J. Inst. (Civil) 4.1. As other district courts have concluded, "A jury could not be expected to understand and to apply the two different standards of reasonableness in the same case." *Padilla v. City of Saginaw*, 867 F.Supp. 1309, 1316 (E.D. Mich. 1994); *see also Goins v. Ajax Metal Processing, Inc*, 984 F.Supp. 1057 (E.D. Mich. 1997); *Coleman v. Wirtz*, 745 F.Supp. 434 (N.D. Ohio 1990).

Directly on point in this regard is *Eddy v. City of Miami*, 715 F.Supp. 1553, 1557 (S.D. Fla. 1989). There, the court discussed the exercise of its pendent jurisdiction over a claim under the Florida Wrongful Death Act, § 768.20 *et seq.*, Fla. Stat., when coupled with a Section 1983 claim. The court found that pendent jurisdiction would be inappropriate because of the likelihood of jury confusion. This was based on the fact that Section 1983 requires that a state official act with gross recklessness in permitting a custom or policy of constitutional deprivation and failing to correct or stop the practice, whereas a state tort action under Section 768.28 requires only negligence by a state employee. In addition, the court noted that Section 768.28(9)(a) is a respondeat superior standard,

---

28 U.S.C. § 1367(a), (c) (emphasis added).

whereas Section 1983 does not base liability upon respondeat superior, and that punitive damages may be awarded against individual defendants under the federal statute but not under the state statute.

The same principles that led the court in *Eddy* to find that pendent jurisdiction would be inappropriate apply in this case. all of plaintiffs' state tort claims are based upon the state's waiver of sovereign immunity in Section 768.28, and subject to the negligence and respondeat superior standards outlined above. Because the high risk of jury confusion renders pendent jurisdiction inappropriate, the plaintiffs' state tort claims should be remanded to state court.

There will be no prejudice to Plaintiffs if this court does not allow the state claims to proceed in this court, because Plaintiffs are free to pursue those claims in state court. Just as the court found in *Padilla*, the risks of multiple litigation are far outweighed here by the foregoing risks of jury confusion.

## CONCLUSION

Officer SISLEY is entitled to summary judgment on the arrest-related claims because he had probable cause to arrest GUY. At the very least, he is entitled to summary judgment on the federal claims because he is protected by qualified immunity. Finally, this Court should remand any remaining state law claims to state court, either because no federal claims against SISLEY remain, or, even if they do, because determination of both federal and state claims will be too confusing to the fact finder.

Respectfully submitted,

**ROBERT A. GINSBURG**
Miami-Dade County Attorney

*Counsel for Defendant Sisley*

Suite 2810
111 Northwest First Street
Miami, Florida 33128-1993
Telephone: (305) 375-5868
Fax: (305) 375-5634
Email: JJA3@co.miami-dade.fl.us

By:_____
James J. Allen
Assistant County Attorney
Florida Bar Number 317861

Case Number 00-6121-Civ-Dimitrouleas/Johnson

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by MAIL on Wednesday, February 23, 2000 upon:

**MALOVE & KAUFMAN, P.A.**
*Counsel for Plaintiffs*

Attention: Steven L. Malove, Esquire
Penthouse 104
Flagler Station
48 West Flagler Street
Miami, Florida 33131


**MARLOW, CONNELL, VALERIUS, ABRAMS, ADLER, & NEWMAN**
*Counsel for South Florida Stadium Corporation, d/b/a Pro Player Stadium; Miami Dolphins, Ltd.; and South Florida Football Corporation, General Partner of Miami Dolphins, Ltd.*

Attention: Thomas F. Valerius
Suite 200
2550 Southwest 27th Avenue
Miami, Florida 33133-3765

_____
Assistant County Attorney